IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVE KAUFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 7:06CV5017 |
| | ) |
| THE WESTERN SUGAR COOPERATIVE, INC., | ) ORDER |
| | ) |
| Defendant. | ) |

This matter is before the court on plaintiff's Motion to Compel Discovery [57]. The matter has been fully briefed. Counsel have substantially complied with the requirements of NECivR 7.1(i). For the reasons discussed below, the court finds that the motion should be denied.

## BACKGROUND

The Amended Complaint [31] alleges that plaintiff began working for the defendant in 1986 as an electrician. The plaintiff is diabetic. In 1992 or 1993, defendant established a schedule of rotating shifts for its electricians. Apparently, there were four positions for electricians working on rotating shifts and two positions for electricians working a fixed day schedule. Plaintiff was assigned to work a rotational shift schedule. He contends his work schedule adversely affected his ability to maintain stable blood sugar levels and contributed to the onset of diabetic retinopathy.

In 1996, plaintiff's diabetic symptoms became worse, and he made four or five requests to transfer to a fixed shift. His requests were denied.

In the spring of 2004, plaintiff took a leave of absence to have laser surgery necessary to correct a retinopathic episode. In June 2004, after recovering from the surgery, plaintiff again requested that he be allowed to work one of the straight day shift positions. His request was denied. He further alleges that the defendant refused to allow him to return to an electrician position because his eyesight did not allow him to weld, which defendant said was an essential function of the electrician position. Although plaintiff requested that he be transferred to a comparable position that occupied a straight day shift, no such position was ever suggested or made available to him. Plaintiff alleges he came into the plant about six times in June and July 2004 and inquired whether there were any comparable straight day shift positions available for him. He was always informed by management that no such positions were available.

Plaintiff charges of discrimination with both the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC) on August 30, 2004. The NEOC issued a finding of no reasonable cause dated August 1, 2005[1],

---

[1]The Commission Determination, be found in filing [64] at pages 44-45 of 50, concludes:

The evidence fails to support the Complainant's allegation that the Respondent failed to accommodate his disability by refusing to transfer him to a straight shift position. The Complainant admits that his welding skills are insufficient for the position, and regardless of how frequently this duty is performed, it is an essential function which must at times be performed without assistance. Further, the Complainant's disability is not under control despite having been on a regular schedule for the past 18 months. The Complainant has had three separate emergency calls due to his disability since being on a regulated schedule and modifying his treatment to be even more effective. The Complainant's physician also has provided evidence which shows that the Complainant's eyesight will preclude him from

after which plaintiff requested review by the EEOC.

The EEOC issued a right to sue letter on or about September 21, 2005, adopting the findings of the NEOC. Plaintiff alleges he did not receive the right to sue letter from the EEOC until on or about June 26, 2006.[2] This lawsuit was filed on July 28, 2006 pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.* Defendant contends the lawsuit was not timely filed.

Documents filed in conjunction with plaintiff's motion for leave to file a second amended complaint (which was denied) indicate that one of defendant's two day shift electricians, Lyle Belgum, very rarely covered night shifts. In April 2007, Belgum left the defendant's employ, vacating a straight day shift electrician position.

## ISSUES PRESENTED

Although plaintiff's motion asks that the court compel defendant to supplement its responses to plaintiff's document requests Nos. 9-13, it appears from a reading of the motion and the reply brief [66] that the dispute does not currently involve request No. 9.[3] The

---

performing some of the essential functions of the position. The Respondent is not required to accommodate a person who is unable to perform the essential functions of the position with or without that accommodation.

[2]Although the Amended Complaint [31] refers to Exhibits A, B and C, pertaining to the exhaustion of administrative remedies and the delay in receiving the EEOC right to sue letter, there are no exhibits attached to the pleading. It appears that the exhibits in question were subsequently filed as the last three pages of plaintiff's motion for leave to file a second amended complaint [42].

[3]Paragraph 8 of the motion addresses a request No 5 for the production of defendant's corporate income tax returns. Under NECivR 7.1(i)(2), "A discovery motion shall include in the text of the motion or

requests and responses at issue are:

> **REQUEST NO. 10:** All documentation indicating night shifts covered by Lyle Belgum during the course of his employment
>
> **RESPONSE:** Attached is a Night Shift Coverage for Vacation, Illness, Injury, Personal, Etc. which was prepared by Western Sugar staff from other records. Western Sugar objects to the production of those records entitled "All Shifts Covered Sorted by Shift and Coverage 2003, 2004, 2005, 2006 and 2007." The purpose of the objection is the fact that the records indicated give the employee's name and the reason why that employee's shift had to be covered which include references to illnesses/injury.
>
> **REQUEST NO. 11:** All job applications submitted for electrician position(s) from January 1, 2007 to present.
>
> **RESPONSE:** Objection. Western Sugar believes the applications of unsuccessful applicants are confidential and should not be produced without a court order.
> Attached is a Notice of Job Opening for Operating Electrician II and the successful application of Keith Prunty.
> Attached is a Notice of Job Opening for Operating Electrician and the successful application of Joshua West.
> Attached is a Notice of Job Opening for Operating Electrician and the successful application of Ronald Rogers.
>
> **REQUEST NO. 12:** The personnel file(s) for the individual(s) hired/ transferred to fill the opening for a "day shift" electrician created by the departure of Lyle Belgum.
>
> **RESPONSE:** Since January of 2007 three postings for shift electrician have been filled. No electrician positions are presently open.
>
> **REQUEST NO. 13:** The personnel file(s) and application(s) for individual(s) hired/transferred to electrician position(s) since April 1, 2007.

---

in an attachment a verbatim recitation of each interrogatory, request, answer, response, and objection that is the subject of the motion." The plaintiff has not supplied the required verbatim recitations. In the absence of the required information, the court will not consider the motion as to plaintiff's request No. 5.

> **RESPONSE:** Objection. Western Sugar believes the personnel files of its employees are confidential and should not be produced without a court order.

On August 8, 2007, defendant served supplemental information as to requests Nos. 9 and 10, and supplemented its responses to requests Nos. 11-13 to raise objections based on relevance. *See* filing [62] (Certificate of Service).

In its brief [63] responding to the pending motion to compel, defendant contends that the requests seek irrelevant information in light of the court's order denying leave to file a second amended complaint adding unexhausted claims for retaliation based on events which occurred in May 2007 after the departure of Lyle Belgum. Defendant further explains:

> Request no. 12 requested a personnel file for the individual who was hired/transferred to fill the opening for a "day shift" electrician created by the departure of Lyle Belgum in 2007 and no such personnel file was provided because no "day shift" electrician were hired/transferred to fill the opening for a "day shift" electrician created by the departure of Lyle Belgum. Defendant's counsel knows that from taking John Araujo's deposition (see 107:21-108:2).[4] Only rotating shift electricians were hired and none have been transferred to "day shift."

Defendant's Brief [63] at p.2.

## LEGAL ANALYSIS

### A. Scope of Discovery

The scope of discovery in federal civil actions is set out in Rule 26 of the Federal Rules of Civil Procedure. Under Rule 26(b)(1), the parties to a lawsuit obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

---

[4]Page 108 of the Araujo deposition was filed at filing [64] at page 32 of 50.

Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

All discovery is subject to the limitations imposed by Rule 26(b)(2), and the court must limit discovery if it determines that:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). "The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c)." *Id*. Rule 26(c) further contemplates the issuance of protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in certain respects.

When the discovery sought appears relevant on its face, the party resisting discovery

has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses v. Halstead*, 236 F.R.D. at 671. If the relevancy of the discovery request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Id.*

### B. Elements of Plaintiff's Claims for Disability Discrimination

The ADA, 42 U.S.C. § 12112(a), provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." "Discrimination" includes an employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer. *Dropinsky v. Douglas County*, 298 F.3d 704, 707 (8th Cir. 2002); 42 U.S.C. § 12112(b)(5)(A).

To prove disability discrimination, the plaintiff "must establish that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability." *Dropinsky v. Douglas County*, 298 F.3d at 706; *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005). The ADA defines "disability" as: "(A) a physical or mental impairment

that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 783 (8th Cir. 2006).[5]

Once a plaintiff has proven a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the employee to prove that the reason was pretextual. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005). To prove pretext, the employee "must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d at 1034.

### C. Ruling

The court declines to consider plaintiff's motion as to document request **No. 5** (for corporate tax records) due to plaintiff's failure to comply with NECivR 7.1(i)(2).

The motion is denied as moot as to requests **Nos. 9 and 10**, in light of the defendant's serving supplemental responses. The response to request No. 10 specifically indicates that the documents produced "are Time Cards for Lyle Belgum for shifts worked other than the day shift." The record contains no reference to any regular shifts other than a "day shift" or a "night shift." Noting the comments in plaintiff's reply brief [66], the court finds that this

---

[5]The disability discrimination provisions in the NFEPA are patterned after the ADA, and the state definitions of "disability" and "qualified individual with a disability" are defined in terms virtually identical to the definitions under the ADA. *See* Neb. Rev. Stat. §§ 48-1102(9) & (10); 42 U.S.C. §§ 12102(2) & 12111(8). "In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA. *See, e.g., Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999); *IBP, Inc. v. Sands*, 563 N.W.2d 353, 357-59 (Neb. 1997)." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002), *cert. denied*, 541 U.S. 1070 (2004).

information is responsive to plaintiff's request that the defendant provide all documentation "indicating night shifts" covered by Belgum.

Turning to requests **Nos. 11, 12 and 13**, the court finds that defendant's objections based on relevance should be sustained. The claims at issue in the lawsuit are for disability discrimination based on events which occurred during or prior to 2004. Requests Nos. 11-13 seek the production of confidential non-party personnel records, based on events which occurred in 2007. The plaintiff has not been allowed to amend his complaint to allege a claim for retaliation based on the events which occurred in 2007.

> Courts have often limited the discovery of company records to the local facility, at which the Plaintiff was employed, in the absence of a showing of particularized need for regional or nationwide discovery.... Even where company records are shown to be relevant, Courts have been reluctant to permit discovery, when the requested disclosures would intrude upon the privacy interests of other, non-party employees. These Courts have concluded that the personnel files of an entire class of employees should not be produced, even in an employment discrimination proceeding, absent a compelling showing of relevance. *See, e.g., Gehring v. Case Corp.*, 43 F.3d 340, 342-43 (7th Cir. 1994) (privacy interests was proper basis upon which to disallow counsel from "root[ing] through the personnel files."), *cert. denied*, 515 U.S. 1159 (1995). As a consequence, a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals.

*Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997).

The court finds that plaintiff has not shown that the value of the information sought in requests Nos. 11-13 outweighs the privacy interests of the affected individuals.

## ORDER

For all the reasons discussed herein,

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel Discovery [57] is denied.

2. The circumstances of this incident would make an award of expenses unjust, and neither party is awarded costs or fees in conjunction with this motion. *See* Fed. R. Civ. P. 37(a)(4)(B).

Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal. See NECivR 72.2(d).

**DATED August 29, 2007.**

                                            **BY THE COURT:**

                                            s/ F.A. Gossett
                                            **United States Magistrate Judge**